MAVRICK *v.* STATE OF INDIANA.

[No. 30,446. Filed October 7, 1965. Rehearing denied November 23, 1965.]

*Arch N. Bobbitt,* of Indianapolis, for appellant.

*Edwin K. Steers,* Attorney General, and *Frederick J. Graf,* Deputy Attorney General, for appellee.

MYERS, J.—This is an appeal from a judgment of the Miami Circuit Court wherein appellant was convicted of the crime of "accessory before the fact of grand larceny." Trial was to the court without the intervention of a jury. Appellant was found guilty as charged in the indictment and was sentenced to the Indiana State Reformatory for a period

of not less than one nor more than ten years and fined $200 and costs.

The indictment charged that two persons by name of William Ray and Terry Mills on March 14, 1962, unlawfully and feloniously took, stole and carried away the sum of $652 belonging to one Wood Wright; that before committing the felony, appellant on that date unlawfully and feloniously, counseled, encouraged, hired and commanded the two aforenamed men to commit the felony.

At the trial, Terry Mills was called as a witness for the State and testified that he had committed the crime of grand larceny on March 14, 1962, by stealing the sum of $652 from Wood Wright at his home in Peru; that William Ray was with him; that together they knocked on the door of Wood Wright at midnight and when he opened it, they pushed him back in the house and took his money. Mills said he had known appellant for quite a few years; that just prior to the commission of the crime, there was a conversation between appellant, William Ray and himself at appellant's Pool Parlor wherein appellant told them that Mr. Wright carried a lot of money around with him and asked them to rob him; that they agreed to do so, whereupon appellant drove them out to Wright's home in order to show it to them; that when they returned to the Pool Parlor, appellant took a shirt from the trunk of his car, tore it in half and gave each one-half to cover their faces; that arrangements were made to meet appellant after the robbery. Mills further stated that he gave appellant "Five Hundred and Thirty some dollars"; that appellant distributed some of it to them at that time, but later on each got one-third of the amount taken; that the reason appellant did not accompany them was because he was "too big and conspicuous looking or he'd do it himself"; that they had other conversations with appellant concerning other proposed robberies.

William Ray also testified as a witness for the State, and his testimony was of the same nature as that of Terry Mills,

corroborating what he had said. At the time of trial, both witnesses were serving sentences of from one to ten years in the State Reformatory.

After judgment was entered, appellant timely filed a motion for new trial in which the only allegation was to the general effect that since the trial and finding of guilty, appellant had discovered new, competent and material evidence which could not have been discovered and produced at trial with reasonable diligence. Three affidavits were attached to the motion. The affiants stated they were being held in the Miami County Jail for various offenses on or about April 2, 1963; that they were in the presence of each other in the "bull pen" on the second floor where they met both William Ray and Terry Mills, who had been returned from the Reformatory to testify against appellant; that in the course of conversation, William Ray made the statement that his attorney had stated to Ray that if he did not testify against appellant he would receive up to twenty-five years in prison, and that if he did testify against appellant he would only receive a one to ten year sentence. One of the affiants said that William Ray stated he was the only one who could save appellant from going to prison and that appellant had nothing to do with the robberies Ray had "pulled." It is to be noted that these affidavits refer only to remarks allegedly made by William Ray and not to anything said by Terry Mills.

Appellant argues that the newly-discovered evidence establishes that appellant was convicted on perjured testimony and tends to establish his innocence. Appellant relies on the rule that if it appears probable that newly-discovered evidence would produce a different result upon a second trial, a new trial should be granted. *Ward* v. *State* (1956), 235 Ind. 531, 135 N. E. 2d 509.

The applicable statute pertaining to causes for new trial in criminal cases reads as follows in part:

"The court shall grant a new trial to the defendant for the following causes, or any of them: * * *

"Eighth. Newly discovered evidence, material for the defendant, which he could not, with reasonable diligence, have discovered and produced at the trial." Burns' Ind. Stat., § 9-1903, 1956 Replacement.

This has been interpreted to mean (1) that such evidence must clearly appear sufficient to probably effect a change in the result of the previous trial; (2) that such evidence must appear not merely to be cumulative or impeaching; (3) that such evidence is material to the issue; and (4) it must appear that the failure to produce the evidence at the trial was not due to a lack of reasonable diligence on the part of the defendant. *Hansen* v. *State* (1952), 230 Ind. 635, 106 N. E. 2d 226; *Sullivan et al.* v. *State* (1937), 212 Ind. 79, 6 N. E. 2d 951; *Bowling* v. *State* (1942), 220 Ind. 497, 44 N. E. 2d 171.

In this case, the direct testimony of two of appellant's accomplices, taken under oath, implicated him as an accessory before the fact. Neither of these witnesses has, at any time, indicated a desire to change his trial testimony. No post-trial affidavit was obtained from either of appellant's accomplices to indicate that they were coerced into testifying against him. Furthermore, the affidavits supporting the motion for new trial make mention of what only one accomplice, William Ray, was purported to have said in the "bull pen" at the Miami County Jail. Thus, the testimony of accomplice, Terry Mills, has not been attacked and must stand. Of itself, it is sufficient to support a finding of guilty by the court.

The so-called newly-discovered evidence herein consists solely of statements purported to have been made by William Ray, out of court and not under oath, to the three affiants. The general rule is that such statements would only be admissible for the purpose of impeaching the testimony of a witness, such as William Ray. 30 West Ind. Law Ency., Witnesses, Ch. 4, § 245, p. 202; 98 C. J. S., Witnesses, § 628, p. 643. Such statements could not be ad-

mitted to prove the truth of the matters stated because the affiants had no personal knowledge of the truth, or falsity, of the statements. *McAdams* v. *State* (1948), 226 Ind. 403, 81 N. E. 2d 671; *Roller et al.* v. *Kling et al.* (1898), 150 Ind. 159, 49 N. E. 948.

The three affidavits only seek to disparage, to discredit, and to prove unworthy of belief the veracity of William Ray. This is merely impeachment and not proof of perjury. *Culley* v. *State* (1923), 192 Ind. 687, 689, 138 N. E. 260. As such, it does not fall within the express provisions of the statute as interpreted. The motion for new trial was properly overruled and the trial court committed no error therein.

Judgment affirmed.

Jackson, C. J., Landis and Arterburn, JJ., concur. Achor, J., not participating.

NOTE.—Reported in 210 N. E. 2d 426.